Ruffin, Chief Justice.
The indictment does not charge auy injury to the person of the prosecutor. Nor is-it framed under the statutes of forcible entry and detainer; and it is admitted that it could not have been so framed, for the want of any estate in the prosecutor. It is then merely an indictment, at common law, for a forcible entry into a dwelling-house in the possession of Pope and expelling him therefrom. The verdict finds an entry and expulsion in such a manner as to make the defendants guilty, in our opinion, provided the house Was in law the dwelling house of the prosecutor. We think, however, that it was the dwelling house of Mr. Curtis, and in his possession, both according to legal intendment and the common understanding of the country; and therefore, that it was not in the possession of Pope.
The rule upon this subject is laid down in general and very plain terms by Mr. East, P. C. 500. “ If a person occupy a dwelling house as the servant or part of the family of another, it is the occupation in law of such other person, and must be so laid in the indictment.” The reason must . . , . . . clear to every mind. The occupation of servants is not suo jure, but as servants and representing their master; and therefore, it is the occupation of the proprietor himself. There may be cases in which the master lets to his servant a tenement or part of his premises on rent, in which the house and possession would be properly laid as those of the servant; for x i J . _ althongh the relation of- master and servant existed between those parties, yet that oflandlord and tenant, quoad the premises let, also existed. And even where there is no stipulation for rent, yet the premises occupied by the servant may be so far removed and distinct from those m the personal occupation of the master, that they may be deemed and stated to be *226 jn the possession of the servant, in an indictment, for instance, ^or burglary. It would seem from some adjudications, that in this last case it may be laid either way. But in treating-¡.fjg master’s house, oc'cupied by the servant, as the servant’s in any case, there is manifestly a departure from the general rule quoted; and therefore those cases are to be regarded as exceptions, founded on particular circumstances. There is-, however, no fact or circumstance to bring this case ^ reason any exception hitherto admitted; but ev-thing to make it fall under the operation of the general J . , . . . .... .. _ principle. The house m question is within the curtilage ana is parcel of the premises belonging to, and actually occupied ^1’- Curtis. It had not been let to Pope at a rent. Nay, the jury find that there was no engagement of any sort 'for use and occupation of this house in particular, and t^at jjg « mereiy usecl the lodging room in his character of servant.” It is obvious, therefore,'that Pope was put to lodge in the room at the mere will of his master; and that this was the more convenient performance of the service to he ren-¿ered w him as-a domestic, and for that reason only. There J ' , . , J was no severance of this from the other parts or the premises; and we think clearly, that Pope had no-possession of his own, ^iaf; possession as servant, was júst as much the possession of his master, as if they had occupied separate rooms under the same roof. Rex vs. The inhabitants of Cheshire, 1 Barn. & Ald. 473—Stockles’ and Edwards' case, 2 Leach C. C. 1015, and R. & R. C. C. 185. In the latter case, Lord Ellenborough remarks, that a servant who lived with his family -in particular rooms of his master’s house by his leave, . - . . ... 1 .ri could notmamtam trespass against his employers, if they eri-tored-the rooms without his consent; and he asks “does a gentleman, who assigns to his coachman the rooms over his ■stables, thereby make him a tenant?” In the same case, Mansfield, Chief Justice, uses this language, “ many servants, as, for instance, porters at park gates, have rooms assigned to them to live in; and surely, if a master- choose to turn away his servant, it does not follow that he cannot evict until the end of the year.” Á very common instance of relation in this State exists in the case of employer and *227 overseer. Certainly, it has never been understood among us, when a planter pla'ces an overseer on his plantation to superintend his operations and hands there, that he puts him into possession as against himself, so that he cannot turn him off during the year, but that the overseer may remain against the will of the master in possession, perhaps, of the only house fit for the occupation of a second overseer or of the owner himself. On the contrary, it is clear law and universally received, that the houses on the plantation are as much in the possession of the owner, as the plantation itself, or the hands, provisions or horses on it.; and it would work an intolerable inconvenience to employers and detriment to agriculture, to hold otherwise. The redress of the overseer is by action on the contract of the employer,'and not lyy holding over that "which was never in his possession for an instant, but as the servant and agent of his employer. So, in the present case, Mr. Curtis never parted from or lost his possession; and, consequently, the house was never in possession of Pope. "When Mr. Curtis dismissed the man from his service, he had a right also to exclude him from his premises; provided, as in case, he did so without injury to his person or other .breach of the peace. '
wiiet'cTthere premises occupied by !!»?y 1 from those padon ot that they deemed and session of the servant, in an indict-st¡moé[0l'for would ffi'em trara some tíoñí'that caseTtm'rtt ' he laid eith-Bu^hése cases are to be regarded as exuepti-on^pin’tlcu-^ lar circuran
When an o-verscer,vin this ijtate, is placed on plantation, he is not put into possession as against his employer; but the latter may, if he thinks proper, turn him off, and evict him from the 1 houses winch he occupies-
seer is by compact p|0jh¿ ®“j «ot'by hold-that which i^poTsessi-the servant and agent of his employer.
box these reasons, the judgment, m the opinion of this Court, is erroneous; and the usual certificate must be sent down, in order that judgment may be entered on the special verdict for the defendants.
Pee Cubiam. Judgment reversed.